**E-FILED**
Wednesday, 15 December, 2004  01:08:51 PM
Clerk, U.S. District Court, ILCD

# United States District Court

CENTRAL DISTRICT OF ILLINOIS

**FILED**
DEC 1 5 2004
JOHN M. WATERS, Clerk
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

UNITED STATES OF AMERICA

v.

JEFFREY LYNN CROTTY,
JACOB PAUL SHANNON, and
JOSHUA S. REYNOLDS

**CRIMINAL COMPLAINT**

CASE NUMBER: 04-6427-M

I, the undersigned complainant, being duly sworn state the following is true and correct to the best of my knowledge and belief.

### CONSPIRACY TO MANUFACTURE METHAMPHETAMINE

From at least December, 2002, through at least June, 2004, in Henry County, in the Central District of Illinois, and elsewhere, the defendants,

**JEFFREY LYNN CROTTY,
JACOB PAUL SHANNON, and
JOSHUA S. REYNOLDS,**

did conspire with each other and with other persons to knowingly and intentionally manufacture, distribute, and possess with intent to distribute 50 grams or more of methamphetamine, its salts, isomers, and salts of its isomers or 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers, a Schedule II Controlled Substance,

all in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A), and 846.

I further state that I am a Special Agent, Drug Enforcement Administration, and that this Complaint is based on the following facts:

See attached Affidavit in Support of Complaint which is made a part hereof.

Continued on the attached sheet and made a part hereof:    ☒ Yes ☐ No

S/Russell Coulter
Signature of Complainant
Russell Coulter, Special Agent
Drug Enforcement Administration

Sworn to before me and subscribed in my presence,

| December 15, 2004 | at | Rock Island, Illinois |
|---|---|---|
| Date | | City and State |

Thomas J. Shields
United States Magistrate Judge           S/Thomas J. Shields
_____          _____
Name & Title of Judicial Officer                 Signature of Judicial Officer

- 2 -

## AFFIDAVIT IN SUPPORT OF COMPLAINT

RUSSELL COULTER, being first duly sworn upon oath, deposes and states as follows:

1. I am a Special Agent with the Drug Enforcement Administration (DEA) and have been so employed since January, 1997. I am aware of the information set forth below in this affidavit through personal investigation, discussions with other law enforcement officers, and a review of the reports of other officers.

2. On June 20, 2004, the Quad Cities Metropolitan Enforcement Group (QCMEG) executed a state authorized search warrant at the residence of Jeffrey Crotty, 23387 E. 1200 Street, Geneseo, Illinois. During the execution of said warrant, agents seized three twenty pound propane tanks which tested positive for the presence of anhydrous ammonia, containers of Coleman fuel, hot plates, plastic funnels, empty cans of starter fluid, muriatic acid, hydrochloric gas generators, table salt, drain opener, plastic tubing, 5.3 grams of pseudoephedrine, empty lithium battery casings, a small postal scale, an open box of clear plastic bags, a piece of U.S. Mail addressed to Jeffrey L. Crotty at 23387 E. 1200 Street, Geneseo, Illinois., and two clear plastic bags with residue which field tested positive for the presence of methamphetamine. Additionally, located on the back porch of the residence was a blue plastic bowl which contained a white powdery substance which was "off-gassing" due to the presence of anhydrous ammonia. The substance field tested positive for the presence of methamphetamine and weighed approximately 133 grams. No samples were taken of the mixture, and no substance was seized, due to the contamination of the mixture by anhydrous ammonia.

3. Jacob Shannon and Joshua Reynolds were present at the residence. Subsequent to the

execution of the search warrant, agents interviewed Shannon and Reynolds, after being advised of their *Miranda* warnings. Shannon and Reynolds both admitted that they had been manufacturing methamphetamine at Crotty's residence prior to the arrival of the Sheriff's Deputies. Shannon stated that he and Reynolds provide Crotty with finished methamphetamine product as payment for allowing them to manufacture methamphetamine at the residence. Shannon estimated that he and Reynolds manufactured methamphetamine approximately 30 times at Crotty's residence. Shannon stated that Crotty was present during every "cook". Shannon stated that after "cooking" methamphetamine at Crotty's residence, he would sell one-half ounce quantities for $800 each. Shannon estimated that he would make $1,500 from each batch of methamphetamine he helped produce.

4. Reynolds stated that he had known Crotty for approximately one year and has never been at Crotty's residence when there was not methamphetamine being manufactured. Reynolds further advised that Crotty had contacted him on June 18, 2004, and told Reynolds that he was going to be out of town and asked Reynolds to check on the house for him. According to Reynolds, Crotty instructed him to manufacture a "batch" of methamphetamine and to leave half of the "batch" at the house for Crotty. Reynolds stated that he sells one-half to one ounce of methamphetamine after each "cook". Reynolds estimated that he has "cooked" methamphetamine approximately 50 times.

5. On June 24, 2004, Crotty was arrested and interviewed after being advised of his *Miranda* warnings. Crotty admitted that he has allowed his residence to be utilized for the purpose of manufacturing methamphetamine. Crotty admitted to participating in the "cooks" and

receiving finished product for the use of his residence. Crotty stated that Reynolds and Shannon had both manufactured methamphetamine at his residence. Crotty stated that the "cooks" at his residence usually produced 30-40 grams of methamphetamine. Crotty stated that on at least 50 occasions, he had either participated in the manufacturing of methamphetamine at his residence or had received methamphetamine as payment for allowing others to manufacture methamphetamine at his residence.

6. Confidential Source Number One, hereinafter referred to as "CS1," has provided information that has been investigated and determined to be reliable. CS1 stated that CS1 has been involved in the manufacture of methamphetamine on at least 120 occasions over the past four years. CS1 reported that each "cook" would produce approximately 70-80 grams of methamphetamine. CS1 stated that a majority of the "cooks" CS1 was present for were performed at Crotty's residence.

7. Confidential Source Number Two, hereinafter referred to as "CS2," has provided information that has been investigated and determined to be reliable. CS2 stated that CS2 has purchased pseudoephedrine for Shannon. CS2 further advised that CS2 was aware that Shannon manufactured methamphetamine at a location near Geneseo, Illinois.

8. Confidential Source Number Three, hereinafter referred to as "CS3," has provided information that has been investigated and determined to be reliable. CS3 stated that CS3 has purchased pseudoephedrine pills for Reynolds on at least two occasions. CS3 advised that Reynolds would give CS3 money to purchase the pills. Reynolds would also give CS3 methamphetamine in exchange for the pills. CS3 further advised that Reynolds manufactures

methamphetamine at a location near Wolf Road, Geneseo, Illinois. CS3 stated that at the location there are two barns and a shed on the property and that there is always a full anhydrous ammonia tank located on the premises for Reynolds to use.

S/Russ Coulter<br>
RUSSELL COULTER<br>
SPECIAL AGENT,<br>
DRUG ENFORCEMENT<br>
ADMINISTRATION

Sworn to before me and subscribed in my
presence this 15th day of December, 2004.

S/Thomas J. Shields
THOMAS J. SHEILDS
UNITED STATES MAGISTRATE JUDGE